IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANGELIINA LYNN LAWSON, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:25-cv-02199-JWB-TJJ |
| | ) |
| ERIC GODDERZ, et al., | ) |
| Defendants. | ) |

JURY TRIAL DEMAND

PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiff Angeliina Lynn Lawson, appearing pro se, respectfully submits these objections to the Report and Recommendation ("R&R") issued by the Hon. Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b)(2), Plaintiff objects to each finding recommending dismissal of her claims, and requests de novo review by the District Court. This case presents constitutional and statutory violations so egregious that they warrant federal intervention.

Plaintiff asserts violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, Title II of the Americans with Disabilities Act (ADA), and 42 U.S.C. § 1983, based on ongoing judicial misconduct, denial of accommodations, retaliation, and abuse of discretion by Kansas state court actors including Judge Eric Godderz, Chief Taylor Wine and Judge John Bryant. Plaintiff also asserts that the underlying state court proceedings violated the Kansas Constitution, Article 3 § 1, and the Kansas Bill of Rights.

Plaintiff has demanded a jury trial under the Seventh Amendment and Fed. R. Civ. P. 38, and objects to the R&R's pre-discovery dismissal which improperly resolves contested factual issues that must be reserved for a jury.

Jurisdiction under Judge Godderz and Chief Taylor Wine was invalid under Kansas law because: (1) No party resided in Anderson County; (2) The child never resided there; (3) Motions to transfer were ignored; (4) No proof of service per K.S.A. 60-203; (5) Judge expressed open bias and refused venue hearing; (6) Court acted in direct conflict with Kansas Constitution Art. 3.

Where disputed facts exist—such as credibility of abuse disclosures, retaliatory motive, or GAL influence—Rule 8 requires the Court to allow the claims to proceed to discovery and trial. These are not questions suitable for Rule 12(b)(6) dismissal.

These state constitutional violations are actionable through 42 U.S.C. § 1983, where state courts acting under color of law deprive rights secured by the U.S. Constitution or statutes. See Monroe v. Pape, 365 U.S. 167 (1961).

OBJECTION 1: JURISDICTIONAL DEFECTS AND VOID ORDERS

The R&R fails to address the fact that the Anderson County District Court lacked jurisdiction ab initio and operated without constitutional authority from the outset. Plaintiff's case (2020-DM-131) was improperly venued and adjudicated in a county where neither party resided, the child never resided (see K.S.A. 23-3301), and no educational, medical, or therapeutic services were based, nor any of the child's friends or extracurricular activities or family friends and since it is a two hour drive from where Plaintiff lives has made it difficult for witnesses or to be able to use public disability services for the court hearings.

Pursuant to K.S.A. 60-203, proper service of process and filing must be affirmatively demonstrated. In this case, Plaintiff was never served with the original divorce petition in September 2020 and received no notice of hearings thereafter. As a pro se litigant, Plaintiff was further denied meaningful access to the docket. The Kansas Supreme Court has adopted administrative Rule 122—applicable only to family law cases—that restrict access to case filings within the Odyssey eFile system. Specifically, these rules prohibit pro se parties from downloading court filings remotely.

The only means for a pro se litigant to access filings in this case was to physically travel to the courthouse and use a public terminal—an unreasonable burden that disproportionately impacts individuals with disabilities. After requesting ADA accommodations, Plaintiff was quoted over $900 for a transcripts even knowing I am on a poverty affidavit, despite her lawful right to access the record. Compounding this access barrier, the court clerk mislabeled Plaintiff's affidavit as "confidential" during an ongoing judicial investigation, effectively concealing it from the public record. Additionally, backdated court orders were withheld for over two weeks, preventing Plaintiff from timely filing appeals and closing her window for relief before she ever saw the ruling. These acts of record tampering, concealment, and delay constitute a systemic violation of due process, and the policy itself creates an unconstitutional barrier to court access, in violation of both the Fourteenth Amendment and Title II of the ADA. This restriction violates equal protection, imposes an unconstitutional burden on the right of access to courts, and directly conflicts with Plaintiff's rights under the ADA and First and Fourteenth Amendments.

Plaintiff further asserts that Chief Judge Taylor Wine, in his supervisory capacity over the Fourth Judicial District of Kansas, knowingly permitted unconstitutional, denied Plaintiff's ADA accommodations, and retaliatory acts by his subordinate, Judge Godderz. Despite Writ of Mandamus's against judges and receiving notice of ADA violations and ADA grievances, improper venue retention, and judicial bias, Chief Judge Wine failed to intervene, reassign the case, or ensure compliance with state and federal law. As the designated supervisory judge responsible for ADA oversight and judicial assignment, Wine's inaction constitutes deliberate indifference to Plaintiff's rights under the ADA, the Due Process Clause, and 42 U.S.C. § 1983. See *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010); *Rizzo v. Goode*, 423 U.S. 362 (1976).

Most critically, October 2024 (Index #21), Plaintiff filed a Motion to Transfer Venue to Johnson County under K.S.A. 60-609, as the child resides outside Anderson County and no parties had ever lived there. Judge Godderz openly stated on record: *"I will never allow any case to leave my*

*county,"* demonstrating predisposition, bias, and refusal to entertain a statutory correction of venue. Plaintiff's request for a hearing on motions to transfer venue were denied with judge saying "no", and the presiding judge—Eric Godderz—stated plainly on the record: "I will never allow any case to leave my county," signaling an unconstitutional assertion of jurisdiction and personal bias. The docket contains no ruling or hearing on this motion. Instead, on November 20, 2024 (Index #23), a journal entry was filed without resolving the jurisdictional motion.

This shows that Plaintiff cannot enforce even threshold procedural rights, let alone ADA Title II, within the Kansas forum.[1]

Plaintiff also objects to the procedural structure imposed by the magistrate judge, who barred any further filings during the pendency of the R&R review process. This restriction prevented Plaintiff from fully completing her amended complaint, including the factual allegations and legal arguments against Judge John Bryant and Chief Judge Taylor Wine. It is not fair—nor legally supportable—for the Court to conclude that Plaintiff "failed to state a claim" where she was explicitly prohibited from filing the rest of her complaint. This is a denial of due process under *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), which requires that litigants be afforded "a meaningful opportunity to be heard." Plaintiff preserves this as a distinct ground for appeal.

And because this federal case did not rule on the emergency TROs or writ of habeaus corpus, Plaintiff was left with no other means but to enact U.S. 1443(1) with evidence of no equal protections and state laws prohibiting the constitutional rights from being enforced.

Plaintiff also preserves her removal-based argument under 28 U.S.C. § 1443(1). Where the state court has demonstrated a systemic inability to enforce Plaintiff's federal civil rights—including ADA accommodations, due process, and First Amendment petition rights—options for removal is appropriate. See *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (removal proper where state court "cannot or will not enforce… constitutional rights in any meaningful way"). Congress wrote 1443 in a broad way and there is no text that states "race only." The state court's failure to rule on Plaintiff's October 2024 motion to transfer venue Index #2, combined with the denial to docket accommodations, tampering of pleadings history, KS Supreme Court Rule 102 preventing Pro Se from having access to filings and abuse of judicial declarations of bias ("I will never allow any case to leave my county"), proves that Plaintiff cannot enforce her rights in the Kansas forum. This preservation ensures the appellate court has jurisdiction to consider § 1443 arguments pending in the 10th Circuit Case No 25-3097.

---

[1] **Footnote:**

In *Georgia v. Rachel*, 384 U.S. 780, 803 (1966), the Supreme Court held that 28 U.S.C. § 1443(1) permits removal when a state court's procedures prevent a defendant from enforcing a federal right "that is given to them by explicit statutory enactment protecting equal racial civil rights." While *Rachel* focused on racial discrimination, the Supreme Court later held in *Tennessee v. Lane*, 541 U.S. 509 (2004), that Title II of the ADA enforces fundamental constitutional guarantees and abrogates state immunity. Similarly, in *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975), the Court clarified that removal under § 1443(1) is proper when a state court cannot or will not enforce federal rights "in any meaningful way." In this case, the Anderson County District Court refused to rule on Plaintiff's jurisdictional motion (Index #21) and stated on record it would "never allow any case to leave [the] county." This refusal to adjudicate threshold procedural rights confirms the Plaintiff's inability to enforce her ADA and due process rights in state court, satisfying the *Johnson* standard.

Under *Misco Leasing, Inc. v. Keller*, 240 Kan. 733, 736, 732 P.2d 469 (1987), jurisdiction cannot be presumed from a silent record. It must be affirmatively shown. Even if parties appear, jurisdiction cannot be waived, and a court cannot proceed without statutory authority. Because no journal entry ever established proper jurisdiction in Anderson County, every judicial act issued by that court is void ab initio. This unlawful jurisdiction has led to a cascade of harm: denial of due process, denial of visitation, denial of services, denial of enforcement of child support and alimony arrears, and punitive litigation tactics, including forced psychological evaluations and supervised visitation, meant to retaliate against Plaintiff for asserting her rights.

This record also confirms an abuse of discretion, denial of due process, and unconstitutional retaliation. Plaintiff's ADA accommodation requests were denied. She was charged over $900 for transcripts after requesting accommodations and was barred from accessing filings remotely. Her affidavits were mislabeled as "confidential" during judicial investigations, and backdated orders were delayed in mailing to prevent timely appeals.

Plaintiff invokes Article 3 §1 of the Kansas Constitution, which mandates that judicial power shall be vested in a court of justice, not in statutory courts operating as administrative surrogates that refuses to adjudicate motions, suppresses dockets, and delegates custody decisions to court-appointments. The Kansas Bill of Rights §2 (natural rights), §3 (petition), and §18 (justice without delay) were all violated. Plaintiff's protected activity under both the Kansas and U.S. Constitutions—including filing ADA grievances, judicial complaints, and abuse reports—was met with retaliation.

The Kansas Supreme Court in *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022 (1984) held that statutory courts and agencies may not assume judicial power not vested in them by the Constitution. By permitting GAL Andrew Bolton to act as the final decision-maker over custody and therapy without a hearing, all ex parte without notice with specific instructions to prevent Plaintiff from knowing, Judge Godderz delegated core judicial powers without oversight, rendering the process unlawful.

This case implicates both federal and state constitutional law. The Kansas Constitution guarantees a remedy by due course of law and justice without delay. Plaintiff received neither. No ruling exists denying the motion to transfer venue under K.S.A. 60-609 or 23-3301. No record demonstrates the court's legal basis for exercising jurisdiction. The court refused to issue journal entries, blocked docket access, and suppressed Plaintiff's procedural rights.

Under the Petition Clause of the First Amendment and Kansas Bill of Rights §3, Plaintiff had a right to seek redress. The resulting judicial retaliation, including silencing, supervised visitation, surveillance and monitoring by court staff of my ADA accommodations and labeled them "litigation strategy" as a reason for circulating Plaintiff filings with "how do we handle her", instead of accommodating, and psychological profiling, violates *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

4

This Court is obligated to reject the R&R under Fed. R. Civ. P. 72(b)(2) and conduct de novo review. The actions of the state court actors are also actionable under 42 U.S.C. §§1983, 12132, and 12203. Plaintiff further invokes:

- *Tennessee v. Lane*, 541 U.S. 509 (2004): Title II of the ADA applies to state courts.
- *Caperton v. A.T. Massey*, 556 U.S. 868 (2009): Judicial bias violates due process.
- *Santosky v. Kramer*, 455 U.S. 745 (1982): Parental rights require heightened protection.
- *Forrester v. White*, 484 U.S. 219 (1988): No immunity for administrative failures.
- *Misco Leasing*, 240 Kan. 733: Jurisdiction must be affirmatively shown.

This Court has the authority and the duty to recognize that Anderson County retained jurisdiction unlawfully, acted in bias, refused to correct venue when timely challenged, and concealed judicial acts from review. These are not minor procedural errors, they are constitutional violations that nullify the legitimacy of the proceedings.

Without jurisdiction, and operating in conflict with the Kansas Constitution, all actions taken by the Anderson County family court are void. This includes custody orders, GAL appointment, therapy decisions, visitation restrictions, and all judicial acts between 2020 and present.

The United States Constitution, Kansas Constitution, and applicable federal statutes demand that this Court recognize the jurisdictional defect and refuse to adopt the R&R. The rule of law cannot yield to convenience or retaliation.

OBJECTION 2: CONSTITUTIONAL PLEADING SUFFICIENCY

Plaintiff objects to the R&R's conclusion that her constitutional claims fail to state a claim under Fed. R. Civ. P. 12(b)(6). This finding misapplies the pleading standard and ignores the well-pled factual allegations in both the original and amended complaints. Plaintiff has sufficiently stated claims for violations of her fundamental rights to familial association, procedural due process, equal protection, and First Amendment retaliation, as recognized under 42 U.S.C. § 1983.

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that a complaint must contain enough facts to state a claim to relief that is plausible on its face—not probable, and not proven at the outset. A claim is plausible when the facts alleged permit a reasonable inference of misconduct by the defendants.

Plaintiff has alleged such facts, including: an ex parte custody change without notice or hearing; denial of jurisdictional challenges and access to the record; suppression of ADA grievances; and retaliation for protected speech and petitioning. These allegations, taken as true, demonstrate more than a speculative possibility of harm—they describe a coordinated pattern of misconduct under color of state law.

Moreover, pro se complaints must be construed liberally and held to less stringent standards than those drafted by attorneys. See *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The R&R

fails to apply this principle and instead imposes a heightened standard, contrary to *Twombly* and *Iqbal*, especially in a civil rights case involving state action and constitutional violations.

Plaintiff's complaint invokes established constitutional protections: the Fourteenth Amendment liberty interest in the parent-child relationship (*Santosky v. Kramer*, 455 U.S. 745 (1982)); the right to an impartial tribunal (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)); and the First Amendment right to petition for redress of grievances (*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Taken together, Plaintiff has more than "nudged" her claims across the line from conceivable to plausible. The R&R's dismissal fails to acknowledge this, and improperly resolves factual questions that must instead be tested through discovery and ultimately by a jury.

Accordingly, Plaintiff objects to the R&R's dismissal of her constitutional claims and requests de novo review by the District Court, with all inferences drawn in Plaintiff's favor as required by law.

OBJECTION 3: ADA VIOLATIONS

Plaintiff objects to the R&R's recommendation to dismiss her claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and the ADA's anti-retaliation provision, 42 U.S.C. § 12203. The R&R disregards binding precedent and fails to acknowledge both the systemic denial of access and the retaliation Plaintiff and her disabled son suffered as a direct result of their attempts to assert protected ADA rights.

As established in *Tennessee v. Lane*, 541 U.S. 509 (2004), Title II of the ADA applies to state judicial systems, and the Eleventh Amendment does not bar suits against states when access to courts and fundamental rights are at stake. Plaintiff and her son are qualified individuals with disabilities under 42 U.S.C. § 12102 and 28 C.F.R. § 35.108. Plaintiff's documented communication-based disability required real-time transcription, remote access, and other reasonable accommodations. Her minor child, medically diagnosed with trauma-related impairments, was entitled to continuity of therapy and protective measures under the ADA's integration mandate.

Instead, the state court system—through Judge Godderz, GAL Andrew Bolton, and court-appointed therapist Andrea Dunseth—refused to provide accommodations, obstructed ADA grievance procedures, and retaliated against both Plaintiff and her son. Specific ADA violations include:

- Removal of the child from his established therapist, Alison Dean, despite her use of trauma-informed and disability-competent care, in violation of *Olmstead v. L.C.*, 527 U.S. 581 (1999) and 28 C.F.R. § 35.130(d) (integration mandate);
- Failure by the GAL and therapist to report disclosed abuse, and instead orchestrating joint therapy sessions with the abuser, excluding the protective parent;

- Coordinated actions to confiscate the child's communication devices after he emailed his grandmother about abuse—an act that silenced disability-related complaints and prevented access to safety supports;
- Ex parte custody changes orchestrated during GAL Bolton's international travel and in direct retaliation for Plaintiff's filing of ADA grievances, ethics complaints, and protection orders—all without notice, evidence, or opportunity to be heard.

These actions constitute not only a denial of access to public services in violation of Title II, but also retaliation and coercion prohibited by 42 U.S.C. § 12203 and 28 C.F.R. § 35.134. Plaintiff and her son were punished for engaging in protected activity: requesting accommodations, filing ADA complaints, and attempting to maintain access to therapeutic and legal supports.

The R&R fails to apply the correct legal standard. It does not acknowledge the requirement that public entities must ensure meaningful participation of individuals with disabilities (28 C.F.R. § 35.130(b)(1), § 35.160(b)), nor does it recognize that the GAL and therapist were state actors for ADA purposes when acting under court appointment. The ADA claims are supported by detailed facts and are legally cognizable under controlling precedent.

Accordingly, Plaintiff objects to the R&R's dismissal of her ADA Title II and retaliation claims and requests that the District Court allow these claims to proceed. Plaintiff preserves all ADA claims under 42 U.S.C. §§ 12132 and 12203 for appeal.

OBJECTION 4: STATE CONSTITUTIONAL VIOLATIONS

Plaintiff objects to the R&R's failure to address ongoing violations of the Kansas Constitution, which reinforce and contextualize her federal constitutional claims under 42 U.S.C. § 1983. While the federal court is not a forum for direct enforcement of state constitutional claims, Kansas law and judicial ethics establish standards that are relevant to understanding the scope and gravity of the misconduct alleged.

Under Article 3, § 1 of the Kansas Constitution, judicial power is vested in a single constitutional court—not in statutory divisions operating outside constitutional boundaries. The Anderson County family court exercised jurisdiction without legal basis under Kansas statutes, ignored mandatory venue requirements (K.S.A. 23-3301; K.S.A. 60-609), and unlawfully delegated judicial authority to a Guardian ad Litem (GAL) who functioned as a final decision-maker on custody and therapy without oversight or hearings. Such conduct violates Kansas Supreme Court precedent (*State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022 (1984)), which prohibits administrative agencies and statutory courts from exercising judicial power not vested in them by the Constitution.

Further, Plaintiff's rights under the Kansas Bill of Rights were repeatedly infringed:

- **§ 2 (Natural Rights and Equal Protection)**: Plaintiff was subjected to discriminatory treatment based on her disability and pro se status, including unequal access to court records and services;

- **§ 3 (Right to Petition the Government)**: Plaintiff was punished for exercising her right to file ADA grievances, ethics complaints, and abuse reports through retaliatory court orders, supervised visitation, and psychological evaluations;
- **§ 18 (Access to Courts and Justice Without Delay)**: Plaintiff was denied timely access to the court docket, received backdated orders, and was forced to endure prolonged "temporary" custody orders with no hearing or resolution for over 11 months.

These state constitutional violations provide context for Plaintiff's federal claims under the First and Fourteenth Amendments. The denial of equal protection, due process, and court access under Kansas law mirrors the federal harms Plaintiff alleges and supports the conclusion that state court processes were so fundamentally flawed that federal intervention is warranted.

Accordingly, Plaintiff objects to the R&R's failure to consider how the unconstitutional conduct of state officials under Kansas law underscores and exacerbates the federal constitutional violations at the heart of this case. These facts, while rooted in state law, are essential to Plaintiff's § 1983 claims and remain preserved for review.

OBJECTION 5: SEVENTH AMENDMENT JURY RIGHT

Plaintiff objects to the R&R's recommendation of dismissal prior to any discovery or factual development, as it effectively denies her constitutionally protected right to a trial by jury. The Seventh Amendment guarantees the right to a jury trial in civil cases involving legal claims for damages. Plaintiff has invoked this right pursuant to Fed. R. Civ. P. 38 and seeks compensatory and nominal damages under 42 U.S.C. §§ 1983 and 12132.

The R&R improperly recommends dismissal at the screening stage despite the presence of material factual disputes—particularly concerning motive, intent, retaliation, and credibility. These are precisely the types of issues that juries, not judges, are constitutionally required to resolve. As the Supreme Court held in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."

Plaintiff's complaint alleges detailed facts supporting her claims of judicial bias, retaliation, ADA discrimination, denial of access, and improper venue retention. These are not abstract or conclusory allegations, but concrete events tied to specific actors, documents, and communications. The factual nature of these claims makes them legally and constitutionally inappropriate for dismissal without the benefit of discovery or presentation to a jury.

Dismissing this case at the Rule 12(b)(6) or screening stage would allow judicial actors to avoid accountability for civil rights violations through procedural gatekeeping rather than on the merits. Such a dismissal would violate Plaintiff's right to have a jury determine disputed facts related to her injuries, damages, and the discriminatory intent of public officials acting under color of law.

Accordingly, Plaintiff objects to the R&R's attempt to dispose of jury triable issues through early dismissal and preserves her Seventh Amendment jury trial rights under Rule 38, Rule 72(b)(2),

and 28 U.S.C. § 1291. The Court must allow Plaintiff's claims for damages to proceed to fact-finding and trial unless no reasonable jury could find in her favor—which has not been shown, argued, or tested.

OBJECTION 6: PROCEDURAL DUE PROCESS DURING R&R PROCESS

Plaintiff objects to the R&R's conclusion that certain claims—particularly those concerning Judge John Bryant—were underdeveloped or insufficiently pled. This conclusion overlooks a critical procedural barrier: the Magistrate Judge explicitly stayed further filings during the pendency of the R&R and habeas review process, preventing Plaintiff from completing her amended complaint and attaching exhibits relevant to claims against Judge Bryant and Chief Judge Wine.

This stay materially prejudiced Plaintiff's ability to present a full record, particularly on allegations of ADA retaliation, suppression of filings, transcript denial, and post-dismissal misconduct. Plaintiff complied with the stay in good faith, yet the R&R used that compliance to justify dismissal for lack of detail.

It is fundamentally unfair—and constitutionally impermissible—to penalize a litigant for failing to plead what the Court prohibited her from filing. This procedural contradiction violates Plaintiff's due process rights under Armstrong v. Manzo, 380 U.S. 545, 552 (1965), which holds that due process requires a "meaningful opportunity to be heard."

This Court cannot simultaneously bar amendments and dismiss claims for being incomplete. Plaintiff preserves this procedural denial as a distinct and independent ground for appeal under Rule 72(b)(2), 28 U.S.C. § 1291, and the Fourteenth Amendment.

OBJECTION 7: TITLE II ADA LIABILITY AND SUPERVISORY FAILURE OF STATE ACTORS

Plaintiff objects to the R&R's failure to properly analyze Title II of the ADA and the supervisory responsibilities of state officials under federal law. Plaintiff and her son are both qualified individuals with disabilities as defined under 42 U.S.C. § 12102(1) and 28 C.F.R. § 35.108. Plaintiff's documented impairments require communication accommodations; her son's trauma-related disabilities demand continuity of care and protection from harmful environments.

The State of Kansas, through its courts and designated ADA coordinators, is a public entity under Title II. It failed to accommodate or protect these rights, despite formal notice to ADA coordinators Kelly Johnson (Fourth Judicial District), Joelene Zirkle (Kansas Supreme Court), and Steve Crossland (First Judicial District). Instead of responding with lawful modifications, these officials coordinated or permitted practices that resulted in retaliation, restricted access, and ongoing exclusion—including record suppression, public mocking, and discriminatory application of eFiling restrictions.

The Kansas Supreme Court's administrative policies—such as Rule 122 barring pro se remote docket access—are facially discriminatory and impose unlawful burdens on disabled litigants in

violation of 42 U.S.C. § 12132. These are not isolated incidents, but a pattern of conduct arising from state-controlled systems and enforced by designated supervisory officials.

Chief Judge Taylor Wine, as the responsible ADA compliance authority and judicial supervisor in the Fourth Judicial District, had actual notice of constitutional violations—including venue fraud, ADA grievances, and retaliatory judicial conduct. His refusal to investigate or intervene constitutes deliberate indifference and supports liability under 42 U.S.C. §§ 1983 and 12203. See Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010).

Accordingly, Plaintiff objects to the R&R's dismissal of ADA and supervisory liability claims and preserves this issue for appeal.

OBJECTION 8: JUDGE JOHN BRYANT PATTERN OF RETALIATION AND CONSITUTIONAL VIOLATIONS

Plaintiff's claims against Judge Bryant are improperly dismissed under the false premise of judicial immunity. As explained in *Forrester v. White* and *Pulliam v. Allen*, judges do not enjoy immunity for (1) administrative acts or (2) ongoing constitutional violations. Bryant repeatedly refused to rule on indigency filings, denied ADA relief across multiple dockets, and actively suppressed procedural filings even after jurisdiction transferred via appeal. Plaintiff does not seek damages for past rulings alone, but prospective injunctive relief to stop continued retaliation. These allegations are neither conclusory nor frivolous—they are documented in three dismissed actions with active suppression patterns.

I. Bryant's Acts Were Administrative, Not Judicial

Across three separate state court actions (LV2025CV70, LV2025CV92, LV2025CV95), Judge Bryant engaged in administrative obstruction and clerical manipulation—not adjudication—by:

- Refusing to rule on time-sensitive fee waiver affidavits while proceeding with dismissals;
- Rewriting or selectively suppressing docket entries and denying basic access to file or receive filings;
- Acting in a gatekeeping capacity to obstruct access to emergency hearings, ex parte protection orders, and discovery—without convening any evidentiary proceeding.
- Refusing to recuse himself after Writ of Mandamus and federal lawsuit were filed.

These are ministerial and administrative functions, not judicial acts, and therefore fall outside the shield of immunity. See *Forrester v. White*, 484 U.S. 219, 229 (1988) (administrative decisions, including hiring/firing or case management, not protected).

II. Bryant Acted Without Jurisdiction

Judge Bryant repeatedly ruled in matters after procedural divestiture, including:

- Imposing post-dismissal costs without a jurisdictional basis;
- Ruling on substantive motions after appeal was filed;

**10**

- Denying indigency without statutory findings required under Kansas law, in direct
  conflict with K.S.A. 60-2001(b) and Supreme Court Rule 20.

Because a judge has no jurisdiction to act outside the statutory framework for indigency and
emergency injunctive relief, his orders were ultra vires.

See *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (judges acting in "clear absence of all
jurisdiction" are not immune).

III. Pattern of Retaliation and Discriminatory Intent

Judge Bryant's conduct over time shows a coordinated pattern of retaliation in response to
Plaintiff's protected activity under the ADA and First Amendment:

- Denied all ADA-related motions across majority separate lawsuits;
- Suppressed emergency motions without evidentiary review;
- Sanctioned a disabled, indigent litigant with costs and attorney fees to deter future filings;
- Ignored recusal motions, thereby continuing to adjudicate matters where his impartiality
  was reasonably questioned.

No hearing was granted on any of Plaintiff's ex parte or injunctive motions, and judicial notice
filings alleging retaliation and misconduct were systematically ignored. This conduct, especially
when repeated across dockets, suggests intent to punish and chill Plaintiff's access to courts
based on disability and speech—both constitutionally protected.

IV. Ongoing Constitutional Violations and Prospective Relief

Judicial immunity does not apply to prospective injunctive relief for ongoing constitutional
violations. See *Pulliam v. Allen*, 466 U.S. 522 (1984). Plaintiff seeks forward-looking relief for:

- Restoring access to ADA accommodations;
- Preventing future retaliation through court process;
- Requiring proper docket access and hearing opportunities.

As Plaintiff alleges systemic obstruction of access to justice and ongoing injury from procedural
gatekeeping, the immunity defense is not absolute.

Whether Chief Judge Taylor Wine's failure to intervene, recuse, or supervise subordinate judges
and staff in light of known ADA retaliation and jurisdictional abuse violates Plaintiff's rights
under 42 U.S.C. § 1983 and § 12203.

Judge John Bryant, acting under color of state law, contributed to a pattern of ADA retaliation
and due process obstruction by refusing to recuse himself in the face of documented bias claims,
mishandling Plaintiff's poverty affidavit, and thereby obstructing her ability to prepare for trial.
His actions form part of a broader infrastructure of procedural exclusion and judicial retaliation
as described in *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), supporting supervisory

liability and individual claims under 42 U.S.C. §§ 1983, 12203, and the First and Fourteenth
Amendments.

OBJECTION 9: IMPROPER HEIGHTENED PLEADING STANDARD AND PROCEDURAL
OBSTRUCTION CONTRARY TO RULE 8 AND PRO SE STANDARDS

Plaintiff objects to the R&R's conclusion that her claims must be dismissed at the pleading stage
for allegedly failing to state a claim under Fed. R. Civ. P. 12(b)(6). The magistrate improperly
applied a heightened evidentiary standard to Plaintiff's *initial* complaint, in direct contradiction
to established precedent.

At the motion-to-dismiss stage, a complaint need only contain "a short and plain statement of the
claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The Supreme
Court has made clear that the standard is plausibility, not probability, and certainly not pre-
discovery proof. A court must simply determine whether the factual allegations "raise a right to
relief above the speculative level" and "nudge the claims across the line from conceivable to
plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–570 (2007); *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009).

Further, pro se litigants are entitled to more liberal construction, not less. Courts have long held
that "[a] pro se litigant's pleadings are to be construed liberally and held to less stringent
standards than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th
Cir. 1991). Yet here, the Court has applied a stricter-than-normal interpretation, not only
dismissing claims pre-discovery, but also refusing to allow any further filings—even when
Plaintiff had pending motions and unfinished amended claims that were never addressed.

For example, Plaintiff's factual allegations against Judge Bryant were not permitted to be
completed due to a blanket bar on additional filings during the pendency of the R&R, despite her
good-faith effort to comply with procedural rules. This arbitrary restriction constitutes a denial of
meaningful access to court and violates due process under *Armstrong v. Manzo*, 380 U.S. 545,
552 (1965) ("A fundamental requirement of due process is the opportunity to be heard at a
meaningful time and in a meaningful manner.").

The Court cannot both:

- Dismiss claims for being incomplete or undeveloped, and
- Refuse to allow completion of those very claims through additional filings or
  amendments.

This procedural contradiction unfairly prejudices Plaintiff and compounds the **ADA-based
access barriers** she has faced throughout the case, including transcript denial, docket
suppression, and unequal eFiling restrictions.

Accordingly, Plaintiff requests that the District Court reject the R&R's premature dismissal,
recognize the sufficiency of the complaint under Rule 8, and permit discovery to proceed so that

the factual record can be developed, as required before deciding contested issues of jurisdiction, motive, and credibility.

PRESERVATION OF ALL ISSUES FOR APPEAL

Plaintiff preserves all objections and constitutional claims raised herein under Fed. R. Civ. P. 72(b)(2), 28 U.S.C. § 1291, and applicable state and federal law. This includes rights protected under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. §§ 1983, 1985, 12132, and 12203; and the Kansas Constitution Article 3 § 1 and Bill of Rights §§ 2, 3, and 18. Plaintiff specifically preserves her demand for jury trial, all claims for injunctive and declaratory relief, compensatory and nominal damages, and access to ADA accommodations. All issues raised in her complaint, motions, and objections are preserved for de novo review by the District Court and for further appeal to the Tenth Circuit and the U.S. Supreme Court, if necessary.

CONCLUSION

This case involves fundamental violations of constitutional and statutory rights—due process, ADA access, First Amendment retaliation, and unlawful exercise of jurisdiction by state actors. The Magistrate Judge's Report and Recommendation failed to address these violations in substance and prematurely disposes of well-pled claims that require discovery, factual development, and jury resolution.

Plaintiff respectfully requests that the District Court REJECT the R&R in its entirety, conduct a de novo review of all preserved objections, and permit the case to proceed on the merits. In the alternative, Plaintiff requests leave to amend any claims deemed insufficiently pled due to procedural barriers imposed by the Court.

Pending motions for TRO, ADA accommodations, writ of habeas corpus, and judicial notice remain unresolved and require immediate attention to prevent further irreparable harm.

The rule of law, access to justice, and the integrity of the judiciary depend on ensuring that federal rights are enforceable even when denied in state forums. Plaintiff therefore asks this Court to intervene and grant the relief sought herein.

Respectfully submitted,                                    Date: June 24, 2025

Angeliina Lynn Lawson, Pro Se, Plaintiff
1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above will be served on all counsel of record and defendants via ECF and/or U.S. Mail on this 24th day of June, 2025 once summons and service requirements are completed.

Angeliina Lynn Lawson, Pro Se
1914 5th Ave., Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com

Dated: June 24, 2025