UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

Angeliina Lynn Lawson,

Plaintiff,

v.

Eric W. Godderz, et al.,

Defendants.

Case No. 2:25-cv- 02199-JWB-TJJ

JURY TRIAL DEMANDED

PLAINTIFF'S SUPPLEMENTAL PLEADINGS UNDER FED. R. CIV. P. 15(d)

Plaintiff Angeliina Lawson, proceeding pro se, submits this Supplemental Pleading pursuant to

Fed. R. Civ. P. 15(d) to set forth events and evidence that have come to light since the filing of

the original Complaint in this action. These new facts reveal an ongoing pattern of judicial

misconduct and retaliation across multiple Kansas courts, warranting the addition of two state

judges as Defendants and further supporting Plaintiff's claims of systemic civil rights violations.

As detailed in Plaintiff's recent correspondence with the U.S. Department of Justice, she has

been enduring a "pattern of ADA retaliation and structural obstruction" in state court

proceedings spanning several jurisdictions. The supplemental allegations below describe how

Judges Keven O'Grady and Rhonda Mason (both of the Kansas Tenth Judicial District in

Johnson County) have engaged in a coordinated scheme of obstruction of justice, fraud on the

court, denial of ADA rights of privacy, and abuse of equitable judicial power to undermine

Plaintiff's access to a fair process. These facts were not fully known or complete at the time of

the original Complaint and have only become ripe through recent proceedings and investigations.

They are also directly relevant to impending relief under Rule 60(b)(3) in related cases, as they

demonstrate fraud, misrepresentation, and misconduct by opposing parties and the courts.

Plaintiff respectfully requests that the Court accept this supplemental pleading, permit the joinder

of the additional defendants, and take notice of the continuing pattern of unlawful behavior

described herein.

IDENTIFICATION OF SUPPLEMENTAL DEFENDANTS

- Judge Keven M. O'Grady – District Judge of Johnson County, Kansas (Tenth Judicial
  District). At all relevant times, Judge O'Grady acted under color of state law in presiding
  over portions of Plaintiff's state court matters. As described below, his actions and
  omissions have denied Plaintiff due process and equal access to the courts, in concert
  with other defendants, amounting to retaliation and obstruction of justice. Plaintiff seeks
  to add Judge O'Grady as a defendant for his role in the pattern of coordinating activity
  and civil rights deprivations described herein.

- Judge Rhonda K. Mason – District Judge of Johnson County, Kansas. Judge Mason
  likewise acted under color of state law in handling a civil tort case filed by Plaintiff. Her
  prolonged inaction and failure to perform judicial duties in that case, as detailed below,
  have effectively aided the other defendants' scheme by stalling Plaintiff's pursuit of relief
  through ordinary channels. Judge Mason is being added as a defendant for participating
  in the same pattern of conduct that infringes Plaintiff's federal rights.

SUPPLEMENTAL: PATTERN OF MISCONDUCT AND COORDINATING ACTIVITY

Since the original Complaint, Plaintiff has been subjected to additional incidents of judicial and extrajudicial misconduct spanning Johnson, Anderson, and Leavenworth Counties. These incidents form a pattern of predicate acts (including obstruction of justice and fraud upon the court) that further the ongoing conspiracy to violate Plaintiff's rights. The same core tactics appear in each jurisdiction: procedural rulings (or non-rulings) calculated to disadvantage Plaintiff, suppression of evidence, delays or public exposing of disability accommodations, and retaliation for Plaintiff's protected activities. The following supplemental facts are incorporated into the Complaint to illustrate this pattern:

- Judge O'Grady's Obstructive Orders and Refusal to Acknowledge Indigency: In the Johnson County proceedings, Judge O'Grady refused to rule on Plaintiff's pending *in forma pauperis* (poverty) affidavit, effectively stonewalling her ability to proceed for wavier of witness fees. By denying a decision on the fee waiver, Judge O'Grady obstructed Plaintiff's access to the court and created a procedural catch-22: Plaintiff could not move forward with depositions, witness list on the merits because her poverty affidavit lingered unresolved. This conduct mirrors the obstruction Plaintiff faced in Leavenworth County, where another judge (John Bryant) *"repeatedly refused to rule on [her] indigency affidavit, causing critical delays"* in multiple cases. Like Judge Bryant – who ultimately dismissed Plaintiff's cases without ever addressing her ADA-based fee waiver requests and imposing outrageous fees without a hearing for even filing a suit– Judge O'Grady's inaction deprived Plaintiff of equal justice. Such refusal to rule, coupled with Judge O'Grady's across the board denials of objections to subject matter jurisdiction

and claiming equity court applies but refusing to allow custody issues to be discussed and

then also denying jury trial when alleged abuse require fact finding under Kansas Statutes

of civil procedure, violates Plaintiff's Fourteenth Amendment due process rights and

constitutes an act of obstruction (interfering with the due administration of justice) as

well as fraud on the court. It conveys the appearance (and effect) of a coordinated effort

to hamstring Plaintiff's case procedurally while fast-tracking her opponent's requests.

- Judge Mason's 105-Day Delay and Abandonment of a Civil Tort Case: Judge Mason,

  presiding over Plaintiff's civil tort action in Johnson County (a case in which Plaintiff

  alleges retaliation, fraud, and other torts arising from the family court saga), has failed to

  act on *over 8* fully-briefed motions for over 105 days. For more than three months, no

  rulings or hearings have been forthcoming on critical motions, including motions for

  discovery and injunctive relief that Plaintiff filed to address ongoing misconduct. This

  prolonged and unjustified delay far exceeds the normal timeframe for judicial decision-

  making and violates Judge Mason's duty under Kansas law to decide motions within a

  reasonable time (often 90 days by state guideline). The effect of Judge Mason's inaction

  has been to "freeze" Plaintiff's case, denying her the ability to develop evidence or obtain

  any relief through that forum. Such a delay is tantamount to a constructive denial of

  justice. It aids the broader obstruction scheme by preventing Plaintiff from using the state

  court system to vindicate her rights. Indeed, the inaction appears retaliatory and strategic:

  coming on the heels of Plaintiff's federal filings, the state court's silence preserves the

  status quo that favors the opposing parties. This abandonment of the case violates

  Plaintiff's right to due process (speedy and impartial resolution of her claims) and has

  been part of the pattern of retaliation for her having sought ADA accommodations and

exposed judicial misconduct. By failing to rule at all, Judge Mason effectively shields the other wrongdoers from accountability in that court, furthering the conspiracy to deprive Plaintiff of a meaningful day in court.

• Suppression of Evidence and Coordinated Obstruction via Court-Appointed Actors: Across the various state proceedings, court actors have engaged in suppressing or disregarding key evidence and coordinating to obstruct Plaintiff's advocacy. In Johnson County and elsewhere, ADA coordinators, clerks, judge's assistants, therapists, and other court-appointed professionals – who should be neutral – have instead acted in concert with the adverse parties to undermine Plaintiff. The result was to suppress evidence and information that would have emerged from child's therapy sessions and to cut off Plaintiff's contact with her child under the guise of Plaintiff being "uncooperative" (when in reality she was requesting her rights under law). Such coordination among court-appointed actors – ADA coordinators, clerks, judge's assistants, therapists, and implicitly the judge enabling them – exemplifies the *"pattern of ex parte conduct"* and undue delegation of judicial authority that has infected Plaintiff's cases. Judges have allowed other third parties to effectively dictate outcomes or delay proceedings, rather than supervising them impartially. In one instance, a crucial affidavit filed by Plaintiff was arbitrarily marked "confidential" by a court clerk and withheld from the public case file, preventing its contents from influencing the proceeding. This improper sealing/suppression of evidence (with no request or order to do so) further demonstrates how state court officials have kept key facts out of the record to Plaintiff's detriment and blocking filings from being docketed and change the order of the index to favor opposing parties filings. Each of these acts – false statements to the court, secret communications,

and hiding evidence – constitutes fraud on the court and, taken together, form a pattern of obstruction of justice as defined in 18 U.S.C. §§ 1503 and 1512. They are predicate acts under the civil RICO statute, as they implicate a conspiracy to interfere with the lawful functioning of court proceedings and to deprive Plaintiff of honest services of court officers. Plaintiff has formally brought these concerns to the Kansas authorities; for example, in a recent judicial conduct complaint she documented that a judge "failed to supervise [a] GAL's unchecked authority" and permitted a pattern of one-sided communications and decisions effectively outsourced to biased actors. The concerted efforts of GAL, therapists, and even clerical staff to thwart Plaintiff's case reflect an enterprise of individuals working in tandem to foreclose Plaintiff's parental and civil rights.

- Retaliation and ADA Title II Violations by Judicial Officers: The new developments also evidence direct ADA Title II violations and retaliation by the judges and state courts. Plaintiff is a qualified individual with disabilities and has repeatedly requested reasonable accommodations to ensure effective communication and access to the courts. Instead of honoring these rights, state court officials have either ignored or explicitly denied accommodations – and worse, have taken adverse actions seemingly because Plaintiff asserted her ADA rights. By way of example, Judge Godderz in Anderson County (Fourth Judicial District) proceeded with a crucial hearing on May 8, 2025 without providing Plaintiff the CART services she needed, even after acknowledging on record that the case had been removed to federal court on May 6, 2025. The court never did provide the transcript, notes or real-time captions for that hearing, effectively excluding Plaintiff from meaningful participation. Additionally, as noted above, Anderson County

officials failed to provide Zoom access or timely links to Plaintiff for remote proceedings, leaving her locked out of hearings until after they had begun. Such actions directly violate Title II of the ADA, 42 U.S.C. § 12132, which guarantees disabled individuals equal access to public services (including courts). Furthermore, the retaliatory motive behind many judicial decisions has become evident. After Plaintiff filed ADA grievances and began pursuing federal remedies, the state courts responded in ways that penalized her. For instance, in Leavenworth County, Judge Bryant not only refused to accommodate Plaintiff's indigency (as described earlier) but, immediately after Plaintiff sought appellate or supervisory relief, he issued orders forcing her to pay fees and dismissing her claims – an act Plaintiff correctly described as "financial retaliation for protected activity". Likewise, Plaintiff's ex-husband (Jonathan Lawson, a defendant in this case) was emboldened by the judiciary's inaction on ADA issues: upon learning that Judge Bryant had stayed Plaintiff's civil jury trial and blocked her discovery subpoenas, the ex-husband unilaterally reduced court-ordered support payments to Plaintiff from $1,200 per month to $1.00 and cancelled multiple supervised visitation sessions between Plaintiff and her son. When Plaintiff brought these retaliatory breaches to the state court's attention, the judge refused to enforce the scheduled supervised visitations or remedy the support issue. In sum, the state courts have not only failed to protect Plaintiff from retaliation by other parties, but have effectively joined in the retaliation – using their judicial power to intimidate and punish Plaintiff for asserting her federal rights. Denial of visitation with one's child and imposition of financial burdens both have a chilling effect on Plaintiff's willingness to continue advocacy, and they underscore the coercive tactics at play. Such conduct violates the ADA's anti-retaliation provisions (42 U.S.C. § 12203)

and Plaintiff's First Amendment right to petition the government for redress. It is also

actionable as a conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2), given

that the intent and effect is to deter Plaintiff's participation in court by force, intimidation,

or threat. Plaintiff has alerted federal authorities to this disturbing pattern; in her April 16,

2025 DOJ complaint update, she documented that after she engaged in ADA and civil

rights filings, there was a surge in frightening incidents (including surveillance and an

attempted break-in at her home) which "occurred in the context of [her] ADA and civil

rights filings". These events, coupled with the courts' punitive responses, paint a

compelling picture of ADA-based retaliation intertwined with the obstruction of justice

scheme.

- Abuse of Equitable Jurisdiction (Due Process Violations): Plaintiff's recent experiences

  further demonstrate how Kansas judges have systematically bypassed mandatory

  procedural safeguards by improperly retaining abuse-related matters within equity

  jurisdiction (family court), even when the underlying allegations required factual

  determinations and statutory process. Under K.S.A. 60-3106(a), a Protection From Abuse

  (PFA) proceeding must be supported by evidence presented under oath and subject to

  judicial findings based on a preponderance of the evidence. Further, when factual

  disputes arise and are properly raised in a Chapter 60 civil proceeding, Plaintiff is entitled

  to trial by jury under K.S.A. 60-238, and the court must enter written findings if denying

  that right pursuant to K.S.A. 60-239(a)(2). However, in Plaintiff's case Kansas judges

  have misused the equitable label to deny jury trial requests thereby evading the

  requirements of Kansas statutory law and the U.S. Constitution's guarantee of due

  process. Nevertheless, the court set the matter for hearing without requiring compliance

with K.S.A. 60-3106(a), which mandates proof by a preponderance of the evidence

through sworn testimony or admissible evidence. The presiding Judge O'Grady

summarily denied Plaintiff's Motion to Dismiss, Jury Trial Demand under K.S.A. 60-238,

and Objection to Subject Matter Jurisdiction without issuing any findings of fact, as

required by K.S.A. 60-239(a)(2) and Kansas Supreme Court Rule 170. The failure to

enter findings deprived Plaintiff of her right to appeal, her right to trial by jury on

disputed facts, and her constitutional right to due process. The proceeding was allowed to

continue under the guise of equity, despite involving factual allegations that required

adjudication under Kansas civil procedure statutes. The advancement of a frivolous PFA,

designed to terminate Plaintiff's parental rights, occurred despite the Anderson County

family court case being removed to federal court and pending a certified question before

the Tenth Circuit and potentially the Supreme Court, despite no evidence being presented,

suggests that the court was unwilling to acknowledge wrongdoing by the favored party

(Plaintiff's ex-husband) despite Kansas Supreme Court precedent that they have never

held that equity can override fundamental due process rights and in fact it has repeatedly

warned judges not to substitute discretion for statutory compliance. Similarly, Plaintiff's

attempts to obtain a jury trial on her claims – for example, in her Leavenworth County

civil case alleging ADA retaliation and due process violations – have been thwarted

without any merits-based justification. Judge Bryant imposed an indefinite stay on

Plaintiff's duly filed civil action (Case No. LV-2025-CV-000070) and refused to lift it,

thereby blocking Plaintiff's access to discovery and a jury determination, committing

fraud by ruling on a late motion to dismiss without allowing leave and rewarding that

opposing attorney fees post Plaintiff's notice of appeal without a hearing and while also

granting the poverty affidavit status. Then, in two other civil cases that Plaintiff filed pro

se in state court (LV-2025-CV-92 and CV-95), Judge Bryant dismissed the actions

outright "without addressing the ADA claims" or any of the substantive allegations.

Those dismissals came after Plaintiff faced procedural roadblocks (like the indigency

affidavit issue) that prevented issuing of summons and were executed in a manner that

avoided any adjudication of the facts – effectively sweeping the issues under the rug. The

maintenance of all these disputes in chancery (domestic relations court), as opposed to

allowing them to be heard in law (civil tort or federal court), appears calculated. By doing

so, the state actors have ensured that Plaintiff never receives a full, adversarial trial with

the procedural protections that come with it (jury fact-finding, formal rules of evidence,

and the possibility of damages or injunctive relief against officials). Instead, Plaintiff's

serious allegations (including abuse of her child, fraud by court officials and clerks, and

civil rights violations) have been shunted into *equitable* proceedings where judges have

broad discretion and the trappings of due process are minimal. This misuse of equitable

jurisdiction is itself an element of the coordination scheme: the involved actors

deliberately keep the controversy in a forum where they can control the outcome

informally, rather than allow Plaintiff to bring her claims in a standard legal forum where

she would have greater rights. The result has been a complete denial of justice – no fact-

finder has ever been allowed to hear the full truth. By refusing to make findings or to

allow a case to proceed to jury trial, these judges violated Plaintiff's right to a fair hearing

as guaranteed by the Fourteenth Amendment and Seventh Amendment. It also amounts to

fraud and misrepresentation, in that the courts purport to dispense justice while actually

evading it. Plaintiff has decried this pattern in her grievances, noting that one judge's

orders even referenced *"unrelated past case history"* to tarnish her claims and justify

adverse rulings, rather than addressing the merits of the current case. Such actions

underscore that decisions were made on a prejudicial, pretextual basis – a hallmark of

fraud on the court.

## PATTERN AND COORDINATION

The above supplemental facts, taken together with those in the original Complaint, establish a

clear pattern of illicit conduct that is enterprise-driven and coordinated among the defendants.

The misconduct is not isolated to one judge or one county; it spans multiple jurisdictions and

actors, all aligned in method and motive. Judges O'Grady and Mason (Johnson County),

Godderz (Anderson County), Bryant (Leavenworth County), Kansas Supreme Court, and others

have functioned as parts of a single enterprise with the common purpose of obstructing

Plaintiff's pursuit of justice and retaliating against her for asserting her rights. Judge Eric W.

Godderz's recorded statement that he would 'never allow any case to leave [his] county' despite

acknowledged venue impropriety reveals a corrupt intent to maintain control over litigation

outcomes and obstruct removal to impartial forums. This admission, made in front of counsel,

confirms the systemic abuse of venue and jurisdiction for personal or political ends, consistent

with 18 U.S.C. § 1512(b)(2)'s definition of witness intimidation and obstruction of justice. The

conduct by Judges O'Grady and Mason, in combination with that of Judge Godderz and Judge

Bryant, and Kansas Supreme Court ADA grievance denials easily satisfies the pattern

requirement of 18 U.S.C. § 1961(5), as it reflects multiple predicate acts—including obstruction

of justice, deprivation of rights under color of law, and mail/wire fraud—committed within a

coordinated scheme over a period of less than five years.

This enterprise operates through both formal rulings and behind-the-scenes collusion, and it has employed predicate acts that include:

- Obstruction of Justice: e.g., holding court proceedings without jurisdiction (in violation of 28 U.S.C. §1446(d) during federal removal), refusing to rule on motions or affidavits to prevent cases from moving forward, and manipulating dockets (such as mislabeling a federal removal notice as "correspondence" to conceal it). These acts interfere with the lawful functioning of courts and the administration of justice, satisfying predicate acts under 18 U.S.C. § 1503 and related statutes. Indeed, Plaintiff's reports to the Kansas authorities describe judges proceeding *"in defiance of federal removal and ADA law"* and allowing docket tampering.

- Mail and Wire Fraud / Fraud on the Court: e.g., filing false or misleading orders that omit material facts, and engaging in ex parte email communications or calls to orchestrate outcomes. The collective suppression of Plaintiff's filings and misrepresentation of her positions in court orders amount to a fraud on the court – a fraud directed at the judicial system itself. This is exemplified by incidents such as the sharing of Plaintiff's confidential ADA grievance with unauthorized parties to sabotage her complaint. Using the instrumentalities of email and court record systems to perpetrate these deceptions potentially implicates federal mail/wire fraud statutes (18 U.S.C. §§ 1341, 1343) as predicate acts in a RICO context.

- Retaliation and Intimidation (18 U.S.C. §1512 & §1513): The pattern of retaliatory harm – from financial sanctions to the chilling of Plaintiff's access to her child – is intended to deter Plaintiff from continuing to litigate and to force her capitulation. Such conduct parallels the federal crimes of witness retaliation and intimidation, as it targets a

party/litigant for participating in legal proceedings. The coordinated nature of the

retaliation (with judges and opposing parties acting in concert) supports the inference of

an illicit agreement to injure Plaintiff's person, property, and rights for pursuing lawful

remedies. Plaintiff's filing of police reports about surveillance and break-in attempts

further indicates that those aligned with the enterprise may be engaging in extrajudicial

intimidation tactics, which is deeply concerning and within the scope of RICO predicate

activity if related to the litigation.

- Denial of Rights Under Color of Law: Although not a classic RICO predicate, the

   violations of 18 U.S.C. §242 (deprivation of rights under color of law) are evident –

   public officials have willfully subjected Plaintiff to unequal treatment (denying ADA

   accommodations provided to others, refusing standard judicial process) because of her

   status as a disabled person and a whistleblower. This entrenched pattern fulfills the

   continuity required for RICO (having occurred repeatedly from 2020 through 2025 in

   various courts) and threatens ongoing harm not just to Plaintiff but to the integrity of the

   judicial system.

- Litigation Hold and Spoliation Concerns: Plaintiff further places on the record that formal

   litigation hold notices and preservation demands have been circulated to over 20 court

   staff, clerks, and judicial officers across multiple Kansas counties evidence in open

   records emails. These notices specifically instructed recipients to preserve emails,

   communications, internal directives, and digital case management records related to

   Plaintiff, her ADA filings, and any ex parte communications involving her litigation.

   Despite these notices, Plaintiff has uncovered evidence suggesting that court personnel

   deleted, concealed, or altered material records, including but not limited to docket

annotations, redacted court orders, suppressed filings, and email threads containing ADA grievances and judicial coordination. The conduct constitutes spoliation under Fed. R. Civ. P. 37(e), and supports an adverse inference and further sanctions. Plaintiff respectfully requests that the Court preserve this issue for evidentiary consideration and refer all suspected violations to appropriate disciplinary or investigatory authorities.

Plaintiff has taken steps to alert law enforcement and oversight bodies to this apparent coordination and civil rights conspiracy. In July 2025, Plaintiff notified the Kansas Commission on Judicial Conduct that these matters have also been referred to the U.S. Department of Justice (Civil Rights Division) and the FBI Public Corruption unit for investigation. The Commission has been provided with names of the individuals involved and a timeline of retaliatory acts. Plaintiff's grievances emphasize that multiple judges and court staff are coordinating against her – for instance, sharing internal emails about her ADA filings to *"suppress ADA oversight"* and *"shift blame away from judicial actors".* The fact that the DOJ's Office for Civil Rights has acknowledged Plaintiff's complaint and assigned an attorney to review the "procedural and constitutional harms" she has suffered across dockets underscores the seriousness of the allegations. Indeed, Plaintiff informed DOJ that she believes judges in different counties are collaborating, noting the eerie *"similar statements"* appearing in their orders and an instance where a judge referenced Plaintiff *"again trying to"* do something in his court when in fact she had never previously filed there – suggesting behind-the-scenes influence. In short, the supplemental facts buttress Plaintiff's original RICO claims by demonstrating a *continuing pattern* of activity by an enterprise (composed of the original defendants and the newly added judges) that warrants federal intervention.

Relation to Rule 60(b)(3) and Preservation of Relief

Additionally, Plaintiff submits that the foregoing new evidence is highly relevant to potential relief under Fed. R. Civ. P. 60(b)(3) in any state or federal judgments that have been tainted by fraud, misrepresentation, or misconduct. The actions of Judges O'Grady and Mason (as well as the other state actors) amount to a fraud on the judicial process – from concealing evidence and ex parte influences to issuing orders infected by bias and retaliation. Should any judgments be entered against Plaintiff in the affected state cases (e.g. dismissal of her jury trial demands, or any future judgment in the stalled tort case), Plaintiff will invoke Rule 60(b)(3) to seek relief on the basis of this misconduct. By supplementing her federal complaint now with these facts, Plaintiff ensures they are part of the official record and can be preserved for use in collateral challenges. Indeed, Plaintiff has already filed a formal *"Notice of Fraud Upon the Court and Rule 60(b)(3) Preservation"* in at least one forum, cataloguing these irregularities. This Court's recognition of the supplemental facts will further solidify their use in examining any prior orders or judgments that were procured unfairly. In essence, the same pattern of behavior described herein – judges ignoring law, colluding with one side, and suppressing truth – is grounds for vacating rulings that resulted from such behavior. Plaintiff seeks to have these facts acknowledged now so that no defendant or state actor may later claim these issues were not raised or that Plaintiff "waived" her objections to the fraudulent proceedings. Fraud on the court vitiates even the most final of judgments, and Plaintiff is actively preserving that argument across the board.

Request for Judicial Notice

Pursuant to Federal Rule of Evidence 201, Plaintiff respectfully requests that the Court take

judicial notice of the public record events and filings in the related state court proceedings

discussed above. The fact that certain hearings occurred (or did not occur), that certain motions

were pending for over 105 days, that certain orders were entered (such as dismissals without

findings), and that complaints were lodged with oversight agencies – these are all matters of

public record in court dockets or official correspondence. They are not subject to reasonable

dispute and are capable of accurate determination by sources whose accuracy cannot reasonably

be questioned (e.g., certified court records, official letters). Judicial notice will ensure that this

Court can frankly acknowledge the context of parallel litigation and the outcomes (or lack

thereof) in those forums as part of evaluating Plaintiff's claims. The pattern of misconduct spans

multiple cases, and judicial notice is appropriate to connect the dots. In particular, Plaintiff asks

the Court to note the Kansas judicial conduct complaints and outcomes (or lack of action

thereon), the DOJ OCR complaint and communications, and the timing and content of state court

orders that coincide with Plaintiff's federal filings. These publicly documented facts will aid in

demonstrating the credibility of Plaintiff's allegations and the need for federal relief. Judicial

notice of the state court records will not be used to re-litigate the state cases here, but rather to

illustrate the alleged pattern of coordinating activity and civil rights violations for which Plaintiff

seeks relief in this Court.

CONCLUSION

Plaintiff files this Supplemental Pleading in good faith and not for delay, but to apprise the Court

of crucial developments that strengthen her claims and justify expanded relief. The pattern of

systemic abuse and conspiracy against Plaintiff has become even more evident in recent months.

By allowing this supplement and the joinder of Judges O'Grady and Mason, the Court will

enable a full adjudication of the issues and send a message that no one is above the law – not

even state judges who engage in overt misconduct. Plaintiff respectfully reiterates her request for

the Court to take jurisdiction over these supplemental claims and to ensure that the ADA, due

process, and anti-racketeering laws are given effect so that Plaintiff and her son may finally

obtain justice. These events must not be viewed as isolated judicial failures, but rather as

synchronized components of a broader coordinating enterprise enabled through abuse of

equitable discretion, procedural suppression, and coordinated retaliation against a disabled parent

and minor child. The courts have become the enforcement mechanism—not the safeguard—of

the civil rights violations at the heart of this case. Plaintiff further states that a formal Civil RICO

action is currently pending filing, with litigation hold notices and spoliation warnings already

issued to implicated parties and court officers.

RELIEF REQUESTED

Considering the foregoing supplemental allegations, Plaintiff respectfully requests that this Court

grant the following relief:

1. Filing of Supplemental Pleading: Plaintiff respectfully files this Supplemental Pleading

   pursuant to Fed. R. Civ. P. 15(d), as no defendant has yet been served or responded. This

   filing incorporates post-complaint developments and adds Judges Keven O'Grady and

   Rhonda Mason as defendants in their individual capacities. Plaintiff requests that the

   Clerk of Court docket this pleading and, upon issuance of summons, permit Plaintiff to

   formally serve the newly added defendants under Fed. R. Civ. P. 4. The supplemental

   facts directly relate to Plaintiff's existing claims under the ADA, 42 U.S.C. § 1983, and

civil RICO, and their inclusion is essential to ensure a full and just resolution of this matter.

2. Preservation of Supplemental Facts for Rule 60(b)(3): Plaintiff specifically seeks to preserve these facts as a foundation for relief from any judgments in *any affected actions*, including the Kansas state cases where the described misconduct has denied Plaintiff a fair proceeding. By preserving these facts now, this Court will facilitate their efficient use in collateral proceedings and preempt arguments that Plaintiff failed to timely raise or document the fraud.

3. Judicial Notice of Parallel Proceedings: An Order that the Court will take judicial notice of the relevant filings, orders, and occurrences in the parallel state court proceedings referenced in this supplement, as well as of Plaintiff's official complaints to oversight bodies. This includes (but is not limited to) noticing: the dates and outcomes (or lack thereof) of motions in Plaintiff's Johnson County tort case; the disposition of the Johnson County petitions; the content of Judge O'Grady's and Judge Mason's dockets as they relate to Plaintiff; the Leavenworth County cases handled by Judge Bryant (e.g., dismissal orders and cost assessments).

4. Further Relief: Such other and further relief as the Court deems just and proper.

Notice of Forthcoming Filing: Plaintiff further gives notice that a separate, formal civil RICO complaint is currently being finalized. Litigation hold notices and Rule 37 spoliation demands have been issued and acknowledged by several implicated parties.

Respectfully submitted,                                      Dated: July 25, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Plaintiff, pro se

1914 5th Avenue, Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com | (913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on this 25 day of July 2025, I filed the foregoing Supplemental Pleading

under Fed. R. Civ. P. 15(d) with the United States District Court for the District of Kansas.

As of this filing, no defendant has been served and no counsel has entered an appearance. Upon

issuance of Summons by the Clerk of Court, Plaintiff will promptly serve all named parties in

accordance with Fed. R. Civ. P. 4, and a copy of this Supplemental Pleading will be included in

the service packet to each newly named defendant.

All parties will receive notice and a full copy of this Supplemental Pleading with formal service

of process.

Respectfully submitted,

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Plaintiff Pro Se

1914 5th Avenue, Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com | (913) 972-1661